IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KANDI BREITKREUTZ,

        Plaintiff,

vs.                        Case No. 17-1261-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

2

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On December 12, 2016, administrative law judge (ALJ) Michael D. Shilling issued his decision (R. at 15-26). Plaintiff alleges that she has been disabled since April 16, 2014 (R. at 15). Plaintiff is insured for disability insurance

4

benefits through December 31, 2015 (R. at 17).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 17).  At step two, the ALJ found that plaintiff has severe impairments (R. at 17).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18).  After determining plaintiff's RFC (R. at 20), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 24).  At step five, the ALJ found that plaintiff could perform other work that exists in significant numbers in the national economy (R. at 25-26).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 26).

**III.  Did the ALJ err by not including a limitation in plaintiff's RFC that she would need to elevate her legs because of plaintiff's edema?**

At step 2, the ALJ found that plaintiff had a number of severe impairments, including edema[1] (R. at 17).  On March 19, 2015, Dr. Coleman, a non-examining medical consultant, looked at the medical records, and noted that plaintiff had edema of the lower extremity (R. at 128-129).  Dr. Coleman's RFC limitations did not include any requirement that plaintiff would need to elevate her legs during the workday.

---

[1] Edema (which is noticed more is a person's hands, arms, feet, ankles, and legs) is swelling caused by excess fluid trapped in your body's tissues.  https://www.mayoclinic.org/diseases-conditions/edema/symptoms-causes/syc-20366493 (Aug. 24, 2018).

5

Advanced registered nurse practitioner (ARNP) Gress was one of plaintiff's treatment providers. On November 18, 2015, on a medical source statement form, ARNP Gress stated that plaintiff had edema and so can't stand on her feet for long periods of time. ARNP Gress opined that plaintiff would need to elevate her legs with prolonged sitting or standing, and specifically would need to elevate her legs 50 degrees for 50% of the workday because of her edema (R. at 1074-1076).

On March 10, 2016, the medical treatment notes for the plaintiff included the following instruction for the plaintiff: "Needs to elevate legs with prolonged sitting or standing" (R. at 1286, 1292).

On July 16, 2016, ARNP Gress provided a second medical source statement indicating that plaintiff suffered from edema and could not stand or be on her feet for long periods of time. She again opined that plaintiff needed to elevate her legs with prolonged periods of sitting or standing, and specifically would need to elevate her legs 50 degrees for 50% of the workday because of her edema (R. at 1224-1226).

The ALJ made RFC findings limiting plaintiff to sedentary work with some additional limitations; however, the ALJ did not include in the RFC limitations any requirement that plaintiff would need to elevate her legs during the workday (R. at 20). In making his RFC findings, the ALJ gave partial weight to the

6

opinions of the non-examining consulting physician, Dr. Coleman, who limited plaintiff to light work. The ALJ acknowledged that Dr. Coleman did not examine the plaintiff personally, and did not have the entire record before him which showed that plaintiff's impairments were more limiting than he believed. The ALJ also indicated that the limitation to light work did not fully account for plaintiff's subjective complaints of pain (R. at 23).

The ALJ indicated that he gave little weight to the opinions of ARNP Gress (R. at 23). The ALJ stated that ARNP Gress opined that plaintiff would need to elevate her legs for half the workday, but that these recommendations "are not found in **any** of her treatment notes" (R. at 22, emphasis added). Later, the ALJ, in noting ARNP Gress's limitations, including the need to elevate or lift her legs, stated that these limitations "are not consistent with her own treatment notes…**None of these limitations** is contained in the treatment notes" (R. at 23, emphasis added). The ALJ failed to mention or cite to any treatment notes which are inconsistent with a need to elevate her legs during the workday.

In November 2015 and in July 2016, ARNP Gress opined that plaintiff needs to elevate her legs with prolonged sitting or standing. ARNP Gress then more specifically opined that plaintiff needed to elevate her legs 50 degrees for 50% of the

7

workday when engaged in prolonged sitting or standing due to edema. Treatment notes on March 10, 2016, under patient instructions, states that plaintiff "needs to elevate legs with prolonged sitting or standing" (R. at 1299, 1292). This treatment note is entirely consistent with the opinions expressed by ARNP Gress in November 2015 and July 2016, and clearly contradict the statements of the ALJ the recommendations are not found in "any" of the treatment notes, and are not consistent with the treatment notes.

The question before the court is whether these misstatements of the record by the ALJ constitute harmless error. Courts should apply the harmless error analysis cautiously in the administrative review setting. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way. Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

Contrary to the ALJ's assertion that the need for plaintiff to elevate her legs due to prolonged sitting and standing was

8

not in the treatment notes, that very limitation is in fact contained in the treatment notes of March 10, 2016. Nothing in the treatment notes indicates that this instruction to the patient was changed, modified, or altered, and it is entirely consistent with the opinions expressed by ARNP Gress on November 18, 2015 and July 19, 2016.

As the court stated in Dye v. Barnhart, 180 Fed. Appx. 27, 31 (10th Cir. May 9, 2006), the court cannot attempt to supply a missing finding for the ALJ on legal or evidentiary matters that he did not consider. The ALJ's statements that none of the treatment records discuss the need for plaintiff to elevate her legs because of prolonged sitting or standing is clearly erroneous. Although the treatment note in March 2016 does not discuss the degree or the length in which plaintiff would need to elevate her legs during the workday, it was only in the medical source statement-medical filled out by ARNP Gress in November 2015 and July 2016 that she was specifically asked on the form how high should the legs be elevated, and what percentage of the time during an 8 hour workday should her legs be elevated. The need for plaintiff to elevate her legs due to prolonged sitting or standing is clearly stated in the treatment notes and in the medical source statements by ARNP Gress. Nothing in the treatment notes are clearly inconsistent with the opinions expressed by ARNP Gress.

Furthermore, Dr. Coleman, who did not include any such limitation, rendered his opinion on March 19, 2015, long before ARNP Gress included the limitations and discussed in the treatment notes plaintiff's need to elevate her legs with prolonged sitting or standing (November 18, 2015, March 10, 2016, and July 19, 2016). As the ALJ noted in discounting the opinions of Dr. Coleman, he did not examine plaintiff personally, nor did he have the entire medical record before him, including these opinions and statements by ARNP Gress on this issue. The ALJ himself stated that the entire record showed that plaintiff's impairments were more limiting than Dr. Coleman believed.

On the facts of this case, this court cannot say that no reasonable administrative factfinder, had he considered the treatment records of March 10, 2016, which generally support the opinions of ARNP Gress, would have still made the same RFC findings without including limitations for elevating plaintiff's legs. At the hearing, the vocational expert testified that a person who needed to elevate her feet at least waist high for 45 minutes every 2-3 hours could not work (R. at 61-62). Thus, the limitations expressed by ARNP Gress would impact plaintiff's ability to work. Based upon the ALJ's discussion of the medical records, it appears that there were medical treatment records that the ALJ did not consider which support the opinion of ARNP

10

Gress that plaintiff needs to elevate her legs with prolonged sitting or standing.  This case shall therefore be remanded in order for the ALJ to consider those treatment records, and take them into account when evaluating the opinions of ARNP Gress and in making physical RFC findings for the plaintiff.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 31st day of August 2018, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge